Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASSANDRA WEBB, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff,*<br><br>v.<br><br>PUFFY LLC,<br><br>      *Defendant.* | Case No. 2:25-cv-06970-MWF-(ASx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I.     Introduction............................................................................................. 1

II.    Parties ................................................................................................... 3

III.   Jurisdiction and Venue. ......................................................................... 3

IV.    Facts...................................................................................................... 4

    A.     Defendant's fake sales and discounts.............................................. 4

    B.     Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts. ..................................... 13

    C.     Defendant's advertisements are unfair, deceptive, and unlawful. ............... 16

    D.     Defendant's advertisements harm consumers. ............................... 17

    E.     Plaintiff was misled by Defendant's misrepresentations. ............... 19

    F.     Defendant breached its contract with and warranties to Ms. Webb and the putative class. ............................................................ 20

    G.     Monetary damages would not adequately remedy the threat of future harm to Plaintiff. ................................................................. 21

V.     Class Action Allegations...................................................................... 22

VI.    Claims. ................................................................................................ 23

    First Cause of Action: Violation of California's False Advertising Law ................ 23

    Second Cause of Action: Violation of California's Consumer Legal Remedies Act .................................................................................... 25

    Third Cause of Action: Violation of California's Unfair Competition Law .......... 28

    Fourth Cause of Action: Breach of Contract .................................... 30

    Fifth Cause of Action: Breach of Express Warranty........................ 31

    Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ............ 32

    Seventh Cause of Action: Negligent Misrepresentation .................. 33

    Eighth Cause of Action: Intentional Misrepresentation .................. 34

VII.   Relief. .................................................................................................. 35

# I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

First Amended Class Action Complaint      1          Case No. 2:25-cv-06970-MWF-(ASx)

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7.     So, as numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8.     Defendant Puffy LLC ("Puffy" or "Defendant") sells and markets mattresses and bedding products online (the "Puffy Products" or "Products"). The Products are sold online through Defendant's website, www.puffy.com.

9.     On its website, Defendant lists purported regular prices and advertises purported limited-time sales offering steep discounts—for example, "$1,350 IN SAVINGS"—from those listed regular prices. Defendant uses countdown clocks to convey that its sales are limited-time and on the verge of ending. The countdown clocks represent that the sale will end in a matter of hours. An example is shown below:



10.     Far from being time-limited, however, steep sitewide discounts on Defendant's Products are always available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, or the prevailing market value of Defendant's Products, because Defendant's Products are always available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are always available.

11.     As described in greater detail below, Ms. Webb bought Products from Defendant from its website, www.puffy.com. When Ms. Webb made her purchases, Defendant advertised that sales were going on, and Defendant represented that the

First Amended Class Action Complaint    2      Case No. 2:25-cv-06970-MWF-(ASx)

Products Ms. Webb purchased were being offered at a steep discount from the purported regular prices that Defendant advertised.  And based on Defendant's representations, Ms. Webb believed that she was purchasing Products whose regular price and market value were the purported list prices that Defendant advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited.  These reasonable beliefs are what caused Ms. Webb to buy from Defendant when she did.

12.    The representations Ms. Webb relied on, however, were not true. The purported regular price was not the true regular price that Defendant sells the Product for, the purported discount was not the true discount, and the discount was ongoing—not time-limited.  Had Defendant been truthful, Ms. Webb and other consumers like her would not have purchased the Products, or would have paid less for them.

13.    Plaintiff brings this case for herself and the other customers who purchased Puffy Products.

## II.    Parties

14.    Plaintiff Cassandra Webb is domiciled in Monrovia, CA.

15.    The proposed class includes citizens of every state.

16.    Defendant Puffy LLC is a California corporation with its principal place of business at 13070 Saticoy St., North Hollywood, CA 91605.

## III.    Jurisdiction and Venue.

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.    The Court has personal jurisdiction over Defendant because Defendant resides in this District and it sold Puffy Products to consumers in California, including to Plaintiff.

19.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Venue is proper under 28 U.S.C. § 1391(c)(2) because defendant is subject to personal jurisdiction in this District. Venue is proper under 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Puffy Products to consumers in California and this District, including to Plaintiff.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV.    Facts.

### A.    Defendant's fake sales and discounts.

20.     Defendant Puffy manufactures, distributes, markets, and sells mattresses and bedding products. Puffy sells its Products directly to consumers online, through its website, www.puffy.com.

21.     On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

22.     At any given time, on its website, Defendant advertises steep discounts on its Products. These advertisements prominently display a countdown clock and always offer significant discounts sitewide. Reasonable consumers reasonably interpret Defendant's advertisements to mean that if they buy now, they will be getting a discount from the prices that Defendant usually charges for its Products. And it advertises these discounts extensively: on an attention-grabbing banner on every webpage of its websites; in a large banner image on its homepage; its product pages, the shopping cart, and during checkout. Example screenshots are provided on the following pages:

First Amended Class Action Complaint      4          Case No. 2:25-cv-06970-MWF-(ASx)



*Captured February 21, 2022*



*Captured February 21, 2022*



*Captured August 24, 2023*

*Captured April 2, 2024*



*Captured April 2, 2024*





*Captured January 21, 2025*



*Captured April 22, 2025*



*Captured April 22, 2025*

23.    Defendant also represents that these discounts will only be available for a limited time. In reality, they continue indefinitely. For example, as depicted below, Defendant represents that its sales expire when the countdown clock expires, for example: "00 HOURS 54 MIN 19 SEC." To reasonable consumers, this means that

First Amended Class Action Complaint    7    Case No. 2:25-cv-06970-MWF-(ASx)

when the clock strikes 00:00:00, Defendant's Products will no longer be on sale and will
retail at their purported regular price. But immediately after each purportedly time-
limited sale ends, Defendant generates another similar discount, with a new expiration
date.

24.    For example, on February 13, 2024, Defendant advertised a purportedly
time-limited sale that was valid for less than an hour:



25.    The next day, however, Defendant advertised the same sale, also ending
within the hour:



26.    To confirm that Defendant always offers discounts off purported regular
prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices

First Amended Class Action Complaint    8        Case No. 2:25-cv-06970-MWF-(ASx)

using the Internet Archive's Wayback Machine (available at www.archive.org).[1] That investigation confirms that Defendant's sales are always available. For example, 63 randomly selected screenshots of Defendant's website, www.puffy.com, were collected from the Internet Archive's Wayback Machine and directly from Defendant's website, from 2022-2025. One hundred percent of the 63 randomly selected screenshots of Defendant's website, captured both on the Wayback Machine and directly on the website, displayed a purportedly time-limited, sitewide discount.

27.    Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

28.    Some of Defendant's purported discounts purport to require consumers to apply a coupon code to the order to get the discount. But Defendant's website is programmed to apply the coupon codes automatically when a customer adds a Puffy Product to their cart, without the consumer needing to actually do anything to have the coupon code applied and receive the discount. So substantially all of Defendant's customers purchase at the supposedly discounted price (not the regular price).

---

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/.

29.     In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts.  For example:




30.     For example, on March 19, 2024, Defendant advertised a purported limited time sale of "$1,350 IN SAVINGS." As part of this discount, Defendant listed purported regular prices in strikethrough and lighter font.  In this example, Defendant represented that the twin size Puffy Lux Mattress had a regular list price of $2,249 and a discounted price of $899 when the "MARCHOFFER" code was applied:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   31.     But the truth is, the twin size Puffy Lux Mattress's listed regular price of

20   $2,249 is not its regular price. Instead, the purported regular price is much lower,

21   because Defendant always offers steep sitewide discounts on all of its products. As a

22   result, Defendant's customers did not receive $1,350 off. They received a much lower

23   discount, or no discount at all.

24   32.     Using these tactics, Defendant leads reasonable consumers to believe that

25   they will get a discount on the Products they are purchasing if they purchase during the

26   limited-time promotion. In other words, it leads reasonable consumers to believe that if

27   they buy now, they will get a Product worth X at a discounted, lower price Y. This

28

First Amended Class Action Complaint    11        Case No. 2:25-cv-06970-MWF-(ASx)

creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

33.    Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendant on its website had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

34.    Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells.  And, the list prices do not represent the true market value for the Products, because Defendant's Products are always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are always available.

**B.    Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

35.    As explained above, Defendant sells Puffy products through its website, www.puffy.com. Some Puffy Products are also available through a small number of third-party retailers, including WCC Furniture and Mattress Center, NB Mattress, and Mattress on Demand.

36.    These third-party retailers, however, do not sell Puffy Products at the supposed list or regular price that Defendant advertises.  They sell Puffy Products at the price that Defendant represents to be the substantially discounted, limited-time price. For example, on July 22, 2025, Defendant listed the twin Puffy Lux Mattress for $799 with a list price of ~~$2,149~~. Defendant automatically applied the discount code ("JULYSALE").



37.    On the same day, the same product was available at various third-party retailers for $799, the same supposedly discounted priced that Defendant advertised.



First Amended Class Action Complaint    13        Case No. 2:25-cv-06970-MWF-(ASx)



38.    Google shopping data (which shows the "typical" price for products in recent months[2]) shows that the Puffy Product is typically sold by third-party retailers for the supposedly discounted price of $799—nowhere near Defendant's advertised regular price of $2,149.

39.    This is not limited to Defendant's twin mattress. The chart below shows that the "typical" prices for Defendant's Products are the supposed discounted prices Defendant advertises, not the supposed regular price:

| Puffy Product | Puffy Supposed Regular List Price | Puffy Supposed Discounted Price | Google's "Typical" Price |
|---|---|---|---|

---

[2] https://support.google.com/faqs/answer/10675605?hl=en.

First Amended Class Action Complaint    14    Case No. 2:25-cv-06970-MWF-(ASx)

| | | | |
|---|---|---|---|
| **Puffy Lux Full Mattress** | ~~$2,549~~ | $1,199 | Puffy Lux Mattress<br>4.9 ★★★★★ (6K user reviews)<br>✕ Size: Full ▾   ✕ Thickness: 12 in ▾<br>〰 Typically **$1,199** |
| **Puffy Lux Cal King Mattress** | ~~$2,949~~ | $1,599 | Puffy Lux Mattress    🔔 T<br>4.9 ★★★★★ (6K user reviews)<br>✕ Size: California King ▾   ✕ Thickness: 12 in ▾<br>〰 Typically **$1,599** |
| **Puffy Monarch Twin XL Mattress** | ~~$3,249~~ | $1,899 | Puffy Monarch Mattress<br>4.8 ★★★★★ (599 user reviews)<br>✕ Size: Twin XL ▾<br>〰 Typically **$1,899** |
| **Puffy Monarch Queen Mattress** | ~~$4,549~~ | $3,199 | Puffy Monarch Mattress<br>4.8 ★★★★★ (599 user reviews)<br>✕ Size: Queen ▾<br>〰 Typically **$3,199** |
| **Puffy Monarch King Mattress** | ~~$5,049~~ | $3,699 | Puffy Monarch Mattress<br>4.8 ★★★★★ (599 user reviews)<br>✕ Size: King ▾<br>〰 Typically **$3,699** |

40.   In short, as shown above, Defendant's Products are regularly available from third-party websites and sellers for less than the purported regular prices that Defendant's website advertises. And they are never sold—not even by third parties—at

First Amended Class Action Complaint   15   Case No. 2:25-cv-06970-MWF-(ASx)

the supposed list prices Defendant advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

41. Moreover, regardless of third-party retailers' prices, Puffy Products are primarily sold through Defendant's website, www.puffy.com. If consumers are searching for a Puffy Product, they will go to Defendant's website. For example, if a consumer Googles "Puffy Mattress," the first sponsored and organic link will be www.puffy.com.

42. So, because the Puffy Products are most commonly sold on Defendant's website, for the most common, and prevailing, price of those Products are the supposedly discounted prices always available on Defendant's website, not the advertised list or regular prices.

## C. Defendant's advertisements are unfair, deceptive, and unlawful.

43. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

44. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

45. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

46. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that

First Amended Class Action Complaint   16     Case No. 2:25-cv-06970-MWF-(ASx)

price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

47. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

48. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices and supposed discounts. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**D. Defendant's advertisements harm consumers.**

49. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

50. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

51.    In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

52.    Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

53.    Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

54.    Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations.  Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**E.    Plaintiff was misled by Defendant's misrepresentations.**

55.    On or around May 30, 2023, Ms. Webb purchased the "Puffy Lux Mattress – Hybrid / King" from Defendant's website, www.puffy.com.  She made this purchase while living in Monrovia, CA. At the time she made her purchase, Defendant's website was advertising that the list price for the Puffy Lux Mattress – Hybrid / King was $2,449.  The website was also advertising that, along with a purchase of that Product, customers would receive Puffy Accessories with a regular price and market value of $600.  The website was also advertising a supposedly time-limited sale offering up to $1,350 off Defendant's list prices for purchases made during the supposed promotion.

56.    Ms. Webb read and relied on Defendant's representations on the website described above, specifically that the Products had the regular prices listed above and were being offered at a discount for a limited time. For example, when making her purchase, Ms. Webb read and relied on Defendant's representations that the Puffy Lux Mattress – Hybrid / King had a regular price of "$2,449," that the accessories she received with her purchase had a regular price of "$600," and that she was receiving the advertised discount. She also relied on Defendant's representations that the sale was time-limited and expiring soon. Based on Defendant's representations described and shown above, Ms. Webb reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices, that these regular prices were the market value of the Products that she was buying, that she was receiving the advertised discounts as compared to the regular prices, and that advertised discounts were only available for a limited time (during the limited time promotion). She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discounts.

57.    In the order confirmation that Defendant sent to Ms. Webb after she made her purchase, Defendant represented that the Puffy Lux Mattress – Hybrid / King had a

regular price of $2,449, that the accessories Ms. Webb received had a regular price of $600, and that Ms. Webb was receiving a substantial discount off those regular prices.

58.     In reality, as explained above, Defendant's products, including the Products that Ms. Webb purchased, were always available at a discounted price off the purported regular prices. In other words, Defendant did not regularly (or ever) sell the Products Ms. Webb purchased at the purported regular price, and the Products were not discounted as advertised. Plus, the sale was not time-limited—Defendant's products are always on sale.

59.     Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

**F.     Defendant breached its contract with and warranties to Ms. Webb and the putative class.**

60.     When Ms. Webb, and other members of the putative class, purchased and paid for the Puffy Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

61.     Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which, for Ms. Webb, are shown above).

First Amended Class Action Complaint    20        Case No. 2:25-cv-06970-MWF-(ASx)

Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Webb and putative class members (also shown above for Ms. Webb). For example, Defendant offered to provide Ms. Webb (among other things) the Puffy Lux Mattress – Hybrid / King with a market value of $2,449, and to provide the advertised discount. Defendant also warranted that the regular price and market value of the Product Ms. Webb purchased was the advertised list price and warranted that Ms. Webb was receiving the specified discount on the Product.

62. The regular price and market value of the items Ms. Webb and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

63. Ms. Webb and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

64. Defendant breached its contract by failing to provide Ms. Webb and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendants also breached warranties for the same reasons.

## G. Monetary damages would not adequately remedy the threat of future harm to Plaintiff.

65. Monetary damages are inadequate to remedy Plaintiff's threat of future harm. Thus, in addition to seeking damages, Plaintiff seeks an injunction under California's Consumer Legal Remedies Act, Unfair Competition Law, and False Advertising Law, and based on her quasi-contract/unjust enrichment claim.

66. Monetary damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected

First Amended Class Action Complaint    21        Case No. 2:25-cv-06970-MWF-(ASx)

Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, she is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

## V.    Class Action Allegations.

67.    Plaintiff brings the asserted claims on behalf of the proposed Class or, in the alternative, on behalf of the proposed California Subclass:

- Class: All persons nationwide who, within the applicable statute of limitations period, purchased one or more Puffy Products from Defendant's website, www.puffy.com, that were advertised at a discount (the "Class").

- California Subclass: All such persons who resided in California when they made their purchases.

68.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

69.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class and subclass members.

### Predominance of Common Questions

First Amended Class Action Complaint    22         Case No. 2:25-cv-06970-MWF-(ASx)

70.     There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy**

71.     Plaintiff's claims are typical of the proposed Class.  Like the proposed Class, Plaintiff purchased Puffy Products advertised at a discount on Defendant's website.  There are no conflicts of interest between Plaintiff and the Class.

**Superiority**

72.     A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

**First Cause of Action:**

**Violation of California's False Advertising Law (FAL)**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

73.     Plaintiff incorporates each and every factual allegation set forth above.

74.     Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

75.     Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

76.     Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

77.     As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$2,499~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

78.     The prices advertised by Defendant are not Defendant's regular prices. In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is always a heavily-advertised ongoing promotion entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are "limited time" and only "valid" for a certain time period are false and misleading too.

79.     In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

First Amended Class Action Complaint    24        Case No. 2:25-cv-06970-MWF-(ASx)

80. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Puffy Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

81. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Puffy Products.

82. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

83. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

84. For the claims under California's False Advertising Law, Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief.

## Second Cause of Action:

### Violation of California's Consumer Legal Remedies Act (CLRA)

### (By Plaintiff and the Class, or alternatively, the California Subclass)

85. Plaintiff incorporates each and every factual allegation set forth above.

86. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

87. Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

88. Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

First Amended Class Action Complaint    25    Case No. 2:25-cv-06970-MWF-(ASx)

89.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

90.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

91.    Defendant violated, and continues to violate, section 1770 of the California Civil Code.

92.    Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

93.    Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

94.    And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available (4) misrepresenting the reason for the sale (*e.g.*, "Labor Day Sale," when in fact the sale is ongoing and not limited to Labor Day).

95.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

96.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Puffy Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

97.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Puffy Products.

98.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

99.     Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

100.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief.

101.    CLRA § 1782 NOTICE.  On July 8, 2025, a CLRA demand letter was sent to Defendant's principal place of business and to its registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. In her initial Complaint, Plaintiff only sought injunctive relief, and did not seek damages, on her CLRA claim. But she stated that "If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Nationwide Class will seek all monetary relief allowed under the CLRA." Now, 30 days have passed and Defendant has not corrected the problem

1   for Plaintiff and for each member of the Nationwide Class. Accordingly, Plaintiff seeks
2   all damages available under the CLRA, including punitive damages and reasonable
3   attorney fees.

4       102.    Plaintiff previously filed a CLRA venue declaration. *See* Dkt. 1-1.

### Third Cause of Action:

### Violation of California's Unfair Competition Law

### (By Plaintiff and the Class, or alternatively, the California Subclass)

8       103.    Plaintiff incorporates each and every factual allegation set forth above.

9       104.    Plaintiff brings this cause of action on behalf of herself and the Nationwide
10  Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the
11  California Subclass.

12      105.    Defendant has violated California's Unfair Competition Law (UCL) by
13  engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three
14  prongs of the UCL).

### *The Unlawful Prong*

16      106.    Defendant engaged in unlawful conduct by violating the CLRA and FAL,
17  as alleged above and incorporated here. In addition, Defendant engaged in unlawful
18  conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or
19  practices in or affecting commerce" and prohibits the dissemination of false
20  advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make
21  clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

### *The Deceptive Prong*

23      107.    As alleged in detail above, Defendant's representations that its Products
24  were on sale, that the sale was limited in time, that the Products had a specific regular
25  price, and that the customers were receiving discounts were false and misleading.

26      108.    Defendant's representations were misleading to Plaintiff and other
27  reasonable consumers.

28

109.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

**The Unfair Prong**

110.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

111.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

112.    The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

113.    Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

114.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

115.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Puffy Products.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

116.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Puffy Products.

117.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

118.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

119.    For the claims under California's Unfair Competition Law, Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief.

### Fourth Cause of Action:

### Breach of Contract

### (By Plaintiff and the Class, or alternatively, the California Subclass)

120.    Plaintiff incorporates each and every factual allegation set forth above.

121.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

122.    Plaintiff and Class members entered into contracts with Puffy when they placed orders to purchase Products on Defendant's website.

123.    The contracts provided that Plaintiff and Class members would pay Puffy for the Products ordered.

124.    The contracts further required that Puffy provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Puffy provides Plaintiff and the Class members with the discount advertised on the website and listed in the receipt. These were specific and material terms of the contract.

125.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

First Amended Class Action Complaint    30         Case No. 2:25-cv-06970-MWF-(ASx)

126. Plaintiff and Class members paid Puffy for the Products they ordered, and satisfied all other conditions of their contracts.

127. Puffy breached the contracts with Plaintiff and Class members by failing to provide Products that had a prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Puffy did not provide the discount that Puffy had promised.

128. Plaintiff provided Defendant with notice of the breach, by mailing notice letters to Defendant's principal place of business and registered agent on July 8, 2025.

129. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

130. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

### Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the Class, or alternatively, the California Subclass)

131. Plaintiff incorporates each and every factual allegation set forth above.

132. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

133. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Puffy Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

134. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

First Amended Class Action Complaint    31         Case No. 2:25-cv-06970-MWF-(ASx)

135. In fact, Puffy Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

136. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and to Defendant's California Headquarters on July 8, 2025.

137. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

138. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Sixth Cause of Action:

### Quasi-Contract/Unjust Enrichment

### (By Plaintiff and the Class, or alternatively, the California Subclass)

139. Plaintiff incorporates each and every factual allegation set forth above.

140. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

141. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase Puffy Products and to pay a price premium for these Products.

142. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

143.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

144.    For the quasi-contract/unjust enrichment claims, Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief.

### Seventh Cause of Action:

### Negligent Misrepresentation

### (By Plaintiff and the Class, or alternatively, the California Subclass)

145.    Plaintiff incorporates each and every factual allegation set forth above.

146.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

147.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

148.    These representations were false.

149.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

150.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

151.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Puffy Products.

152.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

153.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products

First Amended Class Action Complaint    33        Case No. 2:25-cv-06970-MWF-(ASx)

because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

154.    For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

### Eighth Cause of Action:

### Intentional Misrepresentation

### (By Plaintiff and the Class, or alternatively, the California Subclass)

155.    Plaintiff incorporates each and every factual allegation set forth above.

156.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

157.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

158.    These representations were false.

159.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

160.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

161.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Puffy Products.

162.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

First Amended Class Action Complaint    34        Case No. 2:25-cv-06970-MWF-(ASx)

163. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

164. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

165. Plaintiff seeks the following relief for herself and the Class and Subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class and Subclass;
- Damages, treble damages, and punitive damages where applicable;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

### **Demand For Jury Trial**

166. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: January 20, 2026                    Respectfully submitted,

                                           By: */s/ Grace Bennett*

                                           Simon Franzini (Cal. Bar No. 287631)
                                           simon@dovel.com
                                           Grace Bennett (Cal. Bar No. 345948)
                                           grace@dovel.com

First Amended Class Action Complaint    35        Case No. 2:25-cv-06970-MWF-(ASx)

1

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

2

3

4

5

*Attorneys for Plaintiff*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28